UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 3 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-375-GWU

DENVER PROPHIT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Prophit

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Prophit

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Denver Prophit, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an anxiety disorder and alcohol abuse in remission. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE) the ALJ determined that Mr. Prophit retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the claimant's education and past work experience could perform any jobs if he had no exertional restrictions, but was "restricted to so-called low stress work involving only simple, non-detailed tasks where public and co-worker contact is casual and infrequent, supervision is direct and non-confrontational, and changes in the workplace are infrequent and gradually introduced." (Tr. 216-17). The VE

7

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 217).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Prophit filed applications for DIB and SSI in November, 2002 (Tr. 42-5, 190-3) alleging disability since June 1, 1983, due to varicose veins in the ankles and calves, back pain with standing less than two hours, weak eyes, and shoulder pain when lifting. (Tr. 63, 100). His Date Last Insured (DLI) was September 30, 1989 (Tr. 45), meaning that he had to show disability existing prior to that date in order to be entitled to DIB. His SSI application is not affected, but he would not be eligible for benefits prior to the date the application was filed.

Very little medical evidence exists before the 1989 DLI, although there are brief office notes indicating that the plaintiff was diagnosed with a back strain in August, 1982 (Tr. 104, 118), and that swelling of the left knee early in 1983 was attributed to prepatellar bursitis by x-ray (Tr. 109-10, 117). No functional restrictions are suggested. State agency physicians who reviewed the record in 2003 concluded that the plaintiff did not have a physical impairment that would cause more than a minimal impact on work-related activity at the DLI. (Tr. 133-4, 154). Accordingly, a

decision to find no "severe" physical impairments during the DIB period was supported by substantial evidence.

Other evidence of the plaintiff's physical condition was presented for the period pertinent to the SSI application. Dr. Ivan Mac performed a consultative physical examination of the plaintiff on December 29, 2002. At that time, Mr. Prophit stated that he had no back pain while he was sitting down, and that he had left knee pain with ambulation but not at rest. (Tr. 119). He had poor vision and felt he needed glasses, and also complained of shortness of breath and headaches. (Tr. 120). Dr. Mac's evaluation showed that the plaintiff did have 20/70 vision. (Tr. 121). His physical examination was largely normal apart from varicose veins around the ankles. (Id.). Motor, sensory, and reflex examinations were normal, as were all ranges of motion. (Tr. 121-2). A left knee x-ray showed only mild spurring and no evidence of an acute fracture, while lumbosacral spine x-rays showed "mild" spurring of L4-L5. (Tr. 122). Dr. Mac diagnosed low back pain, chronic obstructive pulmonary disease, hypertension, and "refractive error," but stated that he was unable to elicit any evidence of back pain during the examination. (Id.). Grip was normal in both hands. In terms of functional restrictions, the physician felt that the plaintiff "*may* have mild difficulty in terms of carrying and handling heavy objects for a prolonged period of time." (Id.) (emphasis added). Mr. Prophit would not have any difficulty sitting or using his upper extremities to perform various physical tasks, and

9

would have no difficulty seeing with a new pair of bifocals. (Id.). He added that the claimant had no difficulty comprehending normal speech during the examination.

State agency physicians who reviewed the record in 2003 concluded that the plaintiff did not have a physical impairment that would cause more than a minimal impact on work-related activity at that time. (Tr. 133-4, 154). There is no evidence to the contrary, and while the plaintiff argues on appeal that Dr. Mac's comments indicate that he was not capable of a full range of exertion, it is noteworthy that Dr. Mac used the term "*may* have mild difficulty." In view of his language, and of the opinions of the state agency reviewers that Mr. Prophit's condition would have no more than a minimal impact on his ability to perform work-related activity, the ALJ's decision to find no "severe" physical restriction is supported by substantial evidence.

As far as Prophit's mental condition was concerned, at the administrative hearing, the plaintiff had described symptoms of post traumatic stress disorder and depression from his Vietnam service, and stated that they had existed since approximately 1972, although nothing was said about these conditions in his original application. (Tr. 211-12). In any case, he described bad dreams, and difficulty relating to people and going out in public, although medication he was taking from the Comprehensive Care Center (CCC) did help. (Tr. 212-13).

Office notes from the plaintiff's treating psychiatrist at the CCC, Dr. S. Raza, show that Mr. Prophit was initially given a diagnosis of post traumatic stress disorder,

10

"rule out" generalized anxiety disorder, and a depressive disorder on March 20, 2003. (Tr. 182-4). The plaintiff mentioned to Raza that he had had flashbacks and nervous spells with choking sensations and heart racing, going back to 1972, but becoming worse recently. (Tr. 182). He lived with his mother (who was helping him financially), but did some odd jobs. (Tr. 184). He also described a history of alcoholism, but stated that he had been sober for the last nine months, and had not used marijuana for three years. (Id.) The physician assigned a current Global Assessment Functioning (GAF) score of 55. (Id.). A GAF score in this range reflects moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Raza suggested outpatient counseling and prescribed medications, which soon included Lexapro, Trazodone, and Seroquel. (Tr. 174, 184). The plaintiff reported that he was responding positively to the Lexapro and Seroquel, with a decrease in depression and anxiety and improved sleep. (Tr. 170-1). Dr. Raza continued to see the plaintiff for medication refills into 2004, and indicated that he was tolerating his medications well, and his functioning was "at the baseline." (E.g. Tr. 158). No specific functional restrictions were given.

Dr. Kevin Eggerman had conducted a consultative psychiatric examination of the plaintiff in May, 2003, at which time Mr. Prophit reported that the medications he had been receiving from CCC seemed to help. (Tr. 127). He appeared to describe

11

more daily activities to Dr. Eggerman, indicating that he would do odd jobs such as carpentry, "driveway work," and work on furnaces, insulation, and painting, when such work was available. (Tr. 126-7). Although he described nervous spells, flashbacks, and bad dreams from his war duty, the plaintiff related his memory of driving a personnel carrier in a calm manner, with no apparent affective distress. (Tr. 127). He stated that he had been abstinent from alcohol for nine and half months, and his most recent charge of public intoxication was July, 2001. (Tr. 128). He had a hobby of wood crafting, which occupied him for a couple of hours a day, and also enjoyed building electronic devices such as amplifiers. (Id.). Other daily activities included taking the garbage out, helping his mother with the dishes, walking to the store, occasionally going to church, and sitting on the hillside with his friends. (Tr. 128-9). Dr. Eggerman noted that Mr. Prophit reported some avoidant tendencies, but "not entirely," and while he was moderately anxious, his concentration remained fair, and his range of affect was not depressed. (Tr. 129). He diagnosed an anxiety disorder and alcohol abuse, with a current GAF of 65, and a highest GAF in the past year of 65-70. (Tr. 130). GAF scores in this range reflect only mild symptoms. DSM-IV-TR, p. 34.      In terms of functional restrictions, Dr. Eggerman thought that the plaintiff would only be mildly to moderately limited in his ability to interact appropriately with the general public, to respond to supervision and co-workers, to

respond appropriately to work pressures in a usual work setting, and to respond to changes in a routine work setting. (Tr. 130).

A state agency psychological reviewer concluded that the plaintiff did not have any medically determinable mental impairment at the DLI, and that for the current period would have only a moderately limited ability to maintain attention and concentration for extended periods and interact appropriately with the general public. (Tr. 150-2).

In view of the fact that the plaintiff makes no specific argument regarding mental restrictions on appeal, and that the hypothetical question was generally consistent with the improvement in condition described by the treating psychiatrist, with Dr. Eggerman's conclusions, and with the state agency reviewing source, substantial evidence supports the ALJ's hypothetical question.

The decision will be affirmed.

This the _31_ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE